UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CARRIE B., | ) |
| Plaintiff, | ) No. 20-cv-5465 |
| v. | ) Magistrate Judge Susan E. Cox |
| KILILO KIJAKAZI, Commissioner of the Social Security Administration, | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Carrie B.[1] appeals the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for disability benefits. The parties have filed cross motions for summary judgment.[2] As detailed below, Plaintiff's motion for summary judgment (Dkt. 17) is DENIED and Defendant's motion for summary judgment (Dkt. 22) is GRANTED. The decision of the Commissioner is affirmed.

**I.    Background**

Plaintiff filed for disability insurance benefits and supplemental security income on December 18, 2017, alleging a disability onset date of October 1, 2017. (Administrative Record ("R.") 13.) Plaintiff's application was denied initially and upon reconsideration. (*Id*.) Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which was held on September 11, 2019. (*Id*.) On October 22, 2019, ALJ Janice M. Bruning issued an unfavorable decision finding that Plaintiff was not disabled as defined in the Social Security Act. (R. 13-27.) The Appeals Council denied Plaintiff's request for review on July 20, 2020, (R. 1-6), leaving the ALJ's

---

[1]    In accordance with Northern District of Illinois Internal Operating Procedure 22, the Court refers to Plaintiff only by her first name and the first initial of her last name(s).

[2]    Plaintiff filed a Brief in Support of Reversing the Decision of the Commissioner of Social Security (Dkt. 17), which this Court construes as a motion for summary judgment.

decision as the final decision of the Commissioner, reviewable by the District Court under 42 U.S.C. § 405(g); *see Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005).

The ALJ's opinion followed the five-step analytical process required by 20 C.F.R. § 416.920. (R. 379-394.) At Step One, the ALJ found that Plaintiff had not engaged in substantial gainful activity since October 1, 2017. (R. 15.) At Step Two, the ALJ found Plaintiff had the severe impairments of spinal disorder, right elbow injury, right finger contracture, left hand wound, obesity, attention deficit disorder, bipolar disorder, post-traumatic stress disorder ("PTSD"), and anxiety. (*Id.*) At Step Three, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments of 20 C.F.R. Part 404, Subpart P, App'x 1. (R. 17.) Before Step Four, the ALJ found Plaintiff had the RFC to perform sedentary work with the following limitations: never climb ladders, ropes, or scaffolding; only occasionally climb ramps, stairs, balance, stoop, crouch, kneel, crawl, bend, or twist; a sit-stand option allowing Plaintiff to stand 1-2 minutes after sitting for 30 minutes; frequently push/pull and reach in all directions with both upper extremities; frequently handle, finger, and feel; understand, remember, and carry out no more than simple routine tasks; no interaction with the public and no more than occasional contact with co-workers and supervisors; no teamwork situations; and no work where a machine sets the pace of work. (R. 21.) At Step Four, the ALJ determined Plaintiff was incapable of performing her past relevant work. (R. 25.) At Step Five, the ALJ found that the are jobs that exist significant numbers in the national economy that Plaintiff can perform, given her age, education, work experience, and RFC. (R. 26.) Because of these determinations, the ALJ found Plaintiff not disabled under the Social Security Act. (R. 27.)

In finding Plaintiff could frequently handle, finger, and feel, the ALJ considered Plaintiff's left hand would and right finger contracture. The ALJ discussed a neurology consultation from

March 22, 2018, where the doctor found that Plaintiff held her fourth and fifth digits on her right hand slightly flexed, but could voluntarily extend them, and also noted "exquisite tenderness to palpation of the lateral elbow and proximal extensor forearm muscles on the right side." (R. 23.) However, the neurologist ultimately found that "on examination and despite the patient's multiple complaints, the only finding involves the subjected report of diminished sensation on the left side, which includes some non-physiologic type pattern." (R. 594.) He concluded that "[b]y far most likely the multifocal symptom complex is in fact related to her underlying psychiatric disorder, PTSD, stress and anxiety, etc." (R. 594-95.) The ALJ also considered the February 6, 2019 report from Dr. Mitchell Goldflies, M.D., which stated that Plaintiff had contraction of the right ring and little fingers, which did "not appear to be associated with the fibrous cords in the palm." (R. 635.) Tinel's sign was negative at the wrist and Finkelstein's test was positive at the wrist.[3] (R. 635.) Dr. Goldflies stated that Plaintiff "may have either Dupuytren's contracture or ulnar nerve compression at the elbow, wrist, or thoracic outlet," and recommended a Medrol Dosepak and provided a referral for occupational therapy.[4] (*Id*.) The ALJ then found that Plaintiff could use her hands to frequently handle, finger, and feel. (R. 23.)

Regarding Plaintiff's mental limitations, the ALJ considered the Paragraph B criteria and

---

[3] Tinel's test determines whether a patient has carpal tunnel syndrome by "tap[ping] over the median nerve at the wrist to see if it produces a tingling sensation in the fingers." Cleveland Clinic, *Carpal Tunnel Syndrome*, https://my.clevelandclinic.org/health/diseases/4005-carpal-tunnel-syndrome (last visited April 22, 2022). The Finkelstein Test is used to diagnose De Quervain's tenosynovitis, a condition "affecting the tendons on the thumb side of your wrist." Mayo Clinic, *De Quervain's tenosynovitis*, https://www.mayoclinic.org/diseases-conditions/de-quervains-tenosynovitis/symptoms-causes/syc-20371332 (last visited April 22, 2022).

[4] Depuytren's contracture "is a hand deformity that…affects a layer of tissue that lies under the skin of your palm…creating a thick cord that can pull one or more fingers into a bent position." Mayo Clinic, *Depuytren's Contracture,* https://www.mayoclinic.org/diseases-conditions/dupuytrens-contracture/diagnosis-treatment/drc-20371949 (last visited April 22, 2022). Medrol Dosepak is the brand name for Methylprednisolone, a corticosteroid "used to treat a number of different conditions, such as inflammation (swelling), severe allergies, adrenal problems, arthritis, asthma, blood or bone marrow problems, eye or vision problems, lupus, skin conditions, kidney problems, ulcerative colitis, and flare-ups of multiple sclerosis." Mayo Clinic, *Methylprednisolone (Oral Route)*, https://www.mayoclinic.org/drugs-supplements/methylprednisolone-oral-route/description/drg-20075237 (last visited April 22, 2022).

found: mild limitations in understanding, remembering or applying information and adapting or managing oneself; and moderate limitations in interacting with others and concentrating, persisting, or maintaining pace. (R. 18-19.) A state agency medical consultant found that Plaintiff could understand, remember, and concentrate sufficiently to carry out 1-2 step instructions. (R. 20.) The ALJ cited that finding and wrote: "[s]imilarly, the undersigned finds claimant can understand, remember and carry out no more than simple routine tasks; and not engage in work where a machine sets the pace of work." (*Id.*) The ALJ also reviewed Plaintiff's psychiatric and therapy records, which showed no cognitive deficits and normal mental status. (R. 24.)

**II.     Social Security Regulations and Standard of Review**

The Social Security Act requires all applicants to prove they are disabled as of their date last insured to be eligible for disability insurance benefits. 20 C.F.R. § 404.131; *Schloesser v. Berryhill*, 870 F.3d 712, 717 (7th Cir. 2017). A court's scope of review in these cases is limited to deciding whether the final decision of the Commissioner of Social Security is based upon substantial evidence and the proper legal criteria. *Scheck v. Barnhart*, 357 F.3d 697, 699 (7th Cir. 2004). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004) (citation and signals omitted). The Court reviews the ALJ's decision directly, but plays an "extremely limited" role in that the Court may not "reweigh evidence, resolve conflicts in the record, decide questions of credibility, or substitute (its) own judgment for that of the Commissioner." *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008); *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004). Although the Court reviews the ALJ's decision deferentially, the ALJ must nevertheless "build an accurate and logical bridge" between the evidence and his conclusion. *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002) (internal citation omitted).

## III. Discussion

Plaintiff raises three issues she contends require remand, none of which the Court finds persuasive: 1) the ALJ failed to properly assess Plaintiff's RFC by finding that she was capable of frequently handling, fingering, and reaching; 2) the ALJ failed to adequately assess Plaintiff's mental RFC by not including a limitation to 1-2 step instructions or tasks; and 3) the ALJ failed to properly assess Plaintiff's subjective symptoms.

First the Court finds the ALJ's decision that Plaintiff is capable of frequent handling, fingering, and reaching is supported by substantial evidence. As noted above, the ALJ considered the evidence that both supported and undermined her conclusion, and ultimately decided Plaintiff's RFC supported frequent handling, fingering, and reaching. That finding is supported by the neurological consultation that found there were no physiological explanations for Plaintiff's symptoms and that the issues were probably primarily psychological. Although Plaintiff is correct that other medical evidence in the record might support a different conclusion, it is not the Court's job to re-weigh evidence, and provided that an ALJ's decision is based on substantial evidence, this Court will not overturn it. The ALJ was not required to accept the Plaintiff's preferred interpretation of the medical evidence. The question before the Court is whether the ALJ's finding was supported by substantial evidence. In this case, a neutral third-party neurologist also found that Plaintiff had no physiological basis for her hand and arm maladies. A reasonable person could review that evidence and conclude that Plaintiff was, therefore, capable of frequent handling, fingering, and reaching. In other words, the ALJ's finding on that issue is based on substantial evidence. Therefore, the Court rejects this argument and denies Plaintiff's motion on these grounds.

The Court also rejects the Plaintiff's argument the ALJ erred in not including a limitation to 1-2 step tasks. The ALJ was not required to entirely adopt the findings of the state agency medical

5

consultant, and, indeed, only found the opinion "somewhat persuasive." (R. 20.) The ALJ's RFC limitations to no more than simple routine tasks and no work where a machine sets the pace of work were supported by the state agency medical consultant's opinion that Plaintiff should be limited to 1-2 step tasks as well as Plaintiff's psychiatric and therapy records showing mostly normal mental capacity and cognition. (R. 24.) Again, Plaintiff may be correct that there are other, more favorable findings that could have been supported by the record. However, again, this Court's role is not to re-weigh the evidence. The ALJ was not required to include a limitation to 1-2 step takes and adequately supported her finding limiting Plaintiff to no more than simple routine tasks and no work where a machine sets the pace of work. As such, the Court rejects this argument as well.[5]

Finally, Plaintiff asserts the ALJ's assessment of Plaintiff's subjective symptoms requires remand; the Court disagrees. If "an ALJ gives specific reasons supported by the record, we will not overturn his credibility determination unless it is patently wrong." *Curvin v. Colvin*, 778 F.3d 645, 651 (7th Cir. 2015). Plaintiff argues that the ALJ erred in considering her daily activities and the side effects of her medications. The ALJ did not find that Plaintiff's daily activities were equivalent to an ability to work full time. Instead, she reviewed Plaintiff's reported daily activities, compared them to the severe symptoms that Plaintiff alleged, and found that they tended to show that Plaintiff's symptoms were not as disabling as she claimed. (R. 25.) This is an acceptable discussion of daily activities and does not support remand. Next, the ALJ did discuss Plaintiff's medication and some of its side effects. (R. 22.) However, there is no medical evidence demonstrating the allegedly disabling nature of these side effects, and, absent such evidence, the ALJ was not required to find that medication side effects precluded Plaintiff from work. *See*

---

[5] Because the Court found the ALJ was not required to limit Plaintiff to 1-2 step tasks, it does not reach the argument that Plaintiff should have been limited to Reasoning Development Level 1 jobs or that the ALJ erred by finding that there were significant numbers of jobs in the national economy that Plaintiff could perform. (Dkt. 17 at 9.)

*Labonne v. Astrue*, 341 Fed. App'x 220, 225-26 (7th Cir. 2009). In short, the Court cannot say the ALJ's finding on this issue was patently wrong and will not remand on this issue.

Thus, the Court will not remand on any of the three bases raised by Plaintiff.

## IV. Conclusion

As detailed above, Plaintiff's motion for summary judgment (Dkt. 17) is DENIED and Defendant's motion for summary judgment (Dkt. 22) is GRANTED.

**ENTERED: APRIL 26, 2022**

Susan E. Cox,
United States Magistrate Judge